It's nice to have a little bit more than three or four minutes, but I'll still try to get through this in a very timely and concise matter. As the court knows, this appeal stems from a denial of a summary judgment on the issue of whether or not Buchanan County is entitled to its claim of sovereign immunity. I don't think there is any dispute between Mr. Berg and I that the primary Buchanan County policy preserves the defense of sovereign immunity. The only question raised by this appeal is whether the ACH ARCH policy, number one, complies with the sovereign immunity statute, and number two, undermines the defense of sovereign immunity as a defense in this case. And I will tell you this, I think the factual elements are pretty simple. Buchanan County contracts with ACH to perform healthcare at the jail. One of the conditions of the contract was to name the sheriff and the county an additional insurer. The question before you is whether or not that constitutes the purchase of insurance under the sovereign immunity statute, 537-610, subparagraph one. I would tell you that it doesn't for this reason. First of all, sovereign immunity, as this court well knows, is the rule in Missouri, unless an exception applies. The exceptions are very broad, we won't go through them, but they're extremely broad. So does this fall within one of the broad exceptions, the insurance, and is it, let me direct you specifically, I think the closest case is the Gregg case, that talks about the existence of insurance. And that's what the General Assembly was worried about, is is there insurance there? And as you know, the coverage is only to the extent of that insurance that's there, and this one doesn't have the standard language that all the policies have in Missouri. And you know what I'm talking about, because it's in the Atlantic policy. Doesn't have the standard language, so this seems like a routine case. Well, Judge, and I hate to do this, but I'm going to disagree with you for this reason. First, the ACH policy was not negotiated or purchased by Buchanan County, Missouri. It was negotiated and purchased by ACH. Buchanan County, Missouri had no input or control over the terms and conditions of that ACH policy. Second, if you look at the ACH policy, which is contained in the joint appendix, you will find that the ACH policy sets forth amounts of coverage that go beyond the scope of 537, 610.1, which I believe creates the conclusion that it wasn't the type of policy that falls within the parameters of 610.1. Because the entity here, Buchanan County, would have known that they couldn't purchase more coverage than was allowable under the statute. And finally, I think there's a distinction with the Gregg case, Judge. In Gregg, there was an attempt to have insurance purchased vis-a-vis the Kansas City Board of Police Commissions. But it was ruled that there you had political subdivision doing it. Here you don't have a political subdivision doing it. You have a separate corporation that goes out and names the county as an insurer. And that's all this is. Let me press you on that. The thing that threw me for a loop, and it's similar to Judge Benton's question, is this was contracted, or at least agreed to, between the private third party and the state institution, the political subdivision. And it's like, you know, I just wonder how far your rule extends. Could a political subdivision delegate the authority to a private entity to go get insurance on its behalf? And would you be making the same argument? What makes this case different from that one? And, Judge, I think the point you raise with a delegation may be different. And the reason I say that is one of the things Mr. Byrd cites in his brief, and I forget which brief now, was Section 105.1070, where the governmental function of acquiring the insurance is delegated to an administrative aspect of the government. Now, I think in a rural county, a governmental entity like Buchanan County could delegate to an individual or an entity within that government the responsibility to go out and get insurance. But that's not what's being done here. Buchanan County isn't saying to ACH, go out and get me insurance. They're saying to ACH, go out and name me an insurer under your policy. I was part of that. Couldn't they have said, and make sure to include the disclaimer that says we're not waiving sovereign immunity? Just cross the T's and dot the I's. Your Honor, I'd have to admit that, yes, they could have done that. For whatever reason, they didn't do that. And that's an issue that we have to address with regards to whether or not the acquisition of the policy by ACH and the naming of Buchanan County and the sheriff constitute purchase under 537.610, and if it does, whether that constitutes a waiver of sovereign immunity. Let me follow up on Judge Strauss' question. Now, we'll leave aside whether Buchanan's a small or big county, but suppose there are really big counties in Missouri that have a million people. And suppose they hire a broker to do this. They say, we're going to bid out to you, broker, an insurance broker, and sign a contract with you. You get all of our insurance. You come in once a year at a board meeting and present a commission meeting and present us all this different insurance. Are you saying that then you could try to invoke what you're saying and say the insurance doesn't cover what the county does? Judge, I guess it would depend on what the specific policy says. But what I will tell you is this. We represent a number of counties with regards to police liability situations. And in those counties that go out and procure insurance, the county attorney, the prosecuting attorney, or whoever's representing the interest of the county, make sure that the sovereign immunity defense is not waived, number one. And number two, the insurance companies that you are usually dealing with in the county realm know to put in the sovereign immunity defense. And I note you're nodding your head because you're probably familiar with that. The distinction here is you're dealing with an insurance company that apparently didn't have any relationship with counties to know whether or not to put in the sovereign immunity defense. But I go back to my initial premise. Is this the purchase of insurance by a governmental entity? And I believe under 537-610 and the cases that we point out to the court in our brief that it is not. Buchanan County did not go out and purchase the policy. ACH had the policy. And the only thing they did was add us as an insurer. I'm sorry, Judge. Why didn't it at least indirectly purchase it when it negotiated a contract paid, I don't know, I think in the realm of $300,000? And I understand some of the bulk of that is for the services that were provided. But at least arguably some of that money was for buying insurance. I would submit to the court that the policy already existed. The policy was already purchased. And the only thing that was done by ACH was to add the sheriff in Buchanan County as a co-insurer. I do not believe, Judge, that that constitutes purchase within the meaning of the sovereign immunity statute. And I think that's the distinction here. Is it in the record as to whether ACH had to pay any additional premiums as a result of adding the sheriff in the county? I don't believe it is. I defer to Mr. Byrd, but I don't believe it is. The only thing that I recall is that ACH produced the policy. The policy was redacted with regards to premiums and things like that. But I don't believe that specific issue is addressed in the record. Well, counsel, as you're aware, there's no definition in the statute of the word simple word purchase. And you've gone to the sales tax law, and I must tell you that you don't want to enter that slump. Becker Electric, the case you cited, has had regulations, overrulings, qualifications. So don't go there. Just stay right on the statute, the 537 statute, the word purchase. Now, in this case, as you may know, the Missouri Supreme Court would go to the dictionary, Webster's New International. They would go to that dictionary on a bridge. They would go to that dictionary and look at all the meanings of the word purchase. And they've got words that are broader than can be, obtain, get, G-E-T. Those are all there. Why wouldn't the Missouri Supreme Court grab one of those and just run with it? Well, Judge, first of all, and I am not relying on Becker. The plaintiff is relying on Becker with regards to the sales tax analogy, number one. Number two, you being a former member of the Supreme Court, I can completely understand why you'd go to the unabridged dictionary. But I think that any definition under the unabridged dictionary with regards to the word purchase implies the acquisition of the policy itself. Whether you get the policy, whether you buy the policy, whether you acquire the policy. But that's not what happens here. All they're having done is being named a co-insured. The policy existed at the time ACH and Buchanan County entered into their contract. And the only thing that was being asked was that ACH name the sheriff and Buchanan County as a co-insured. The other thing I would point out to the court are the two contracts underlying the term or the phrase or the clause, go out and name this co-insured. If you look at the two paragraphs above that contract, it deals with insuring the entity for the negligence of ACH. ACH's policy isn't insuring Sheriff Strong or Buchanan County for their own negligence. They're insuring Sheriff Strong and Buchanan County for the negligence of ACH in the event Sheriff Strong and Buchanan County are sued. That's the whole premise of the contract. And as you go through that contract, that's the whole premise of the policy naming Sheriff Strong and Buchanan County as a co-insured. Counsel, you mentioned that delegation might be different. And you're making a good point, which is when you add somebody as a co-insured, whether we're talking about Judge Benton's, you know, the ones that he mentioned obtain or get used in the past voice. And I'll have a conversation with the opposing counsel about that. You really haven't obtained or gotten anything. I suppose you've been added to an existing policy, but I'm not sure that a county has actually obtained anything that wasn't already there. But maybe I'm wrong. I mean, there's certainly a contrary view, at least in the, you know, when you think about it more abstractly. I understand, Judge. But I just don't think it's the purchase of insurance as contemplated under 537-610. I understand Mr. Byrd's argument. And Mr. Byrd and I could argue until the sun goes down and we're blue in our face. But I don't think at the end of the day, Buchanan County purchased insurance. They were added as co-insureds. They were subject to the ACH policy. But it wasn't the purchase of insurance. And in the absence of the purchase of insurance by the governmental entity, there is no waiver of sovereign immunity. Thank you, Your Honor. I reserve the rest of my time. Thank you, Mr. Baird. Mr. Byrd. May it please the court, counsel. I think from a big-picture perspective, we have insurance that undisputably covers the claims by the plaintiffs in the case. And when you read the purposes behind 537.600 and 610, it's to protect the public coffers while also recognizing that tort victims in some circumstances delineated by the legislature deserve some compensation. And if we have an insurance policy that covers the claims, what is the harm to anybody other than the insurance company of allowing this claim to go forward? And to me, that gets back to the question that's repeated in the case law and the premise that Judge Benton presented earlier, which is the existence of insurance coverage should govern. Okay. Has the Missouri Supreme Court ever even used the phrase existence of insurance? No, it has not, Your Honor. I think that's true, too, from my quick search. So what's your closest case that says existence of insurance is the key? Well, I've cited to you the other statute that is, I believe, a sister statute in this case. And so rather than a court case, I've got the legislature's voicing in 105.1070, which pertains to insurance for state-owned vehicles and aircraft that ties it back to the provisions of 537.600 and talks about obtaining insurance, not just purchasing if it's fired. And so I think that it's broad enough, Your Honor. I think if you look at it under statutory construction, you can go to the dictionary. You can also go outside of that to look at how it's been addressed in similar statutes, even if they're not. Which from the dictionary is your best definition to purchase? I think it's the broad one that you stated earlier, Your Honor, which is obtain, acquire, buy. How did they do that here? How did the county do that here? This was a kind of hypothetical or quite a colloquy I had with opposing counsel. All they did get was get added as a co-insured to an existing policy. How did they obtain, get, or purchase insurance? Well, Your Honor, I think it's an important point because I missed, and not intentionally, but Mr. Berra misstated the record. There is nothing in the record to suggest that. That's the first time I've heard that is this morning. It is not in any of the briefing that that is how this policy came down. What we have in the record is that Buchanan County contractually required ACH to purchase the policy. We also know that the policy is renewed on an annual basis. And I would suggest to you that the principles of agency law govern this entire dispute, which is if I instruct you as my agent to go get it, and you go get it pursuant to the terms that I gave you, which is Buchanan County not providing any terms other than get us insured as an additional insured, ACH renews the policy, gets them named, then they've carried out that responsibility. Let me ask you this. The old law professor is going to come out a little bit here, which is suppose that there was no contract agreement between the county and the private entity, and the private entity went out and added them as coinsurance anyways, added the sheriff and the state. What would happen then? Have they obtained insurance and gotten insurance, or is this somehow different? And if it's different, how is it different? Well, I think under that circumstance, Judge, we would probably come back to the case law that Mr. Bearer has cited extensively, which is the waiver has to be voluntary. And what I think that he would be in a lot stronger position if you didn't have a contractual obligation for ACH to go purchase it. That's what establishes the agency. If they just went out and got it on their own, the public entity would have no knowledge. And how would they have done anything to voluntarily acquire the insurance? So I think there is that voluntary prong. Okay, so let me ask you this. In my opinion, you've got a pretty steep hill to climb because of that strict construction canon, which is that we strictly construe waivers of sovereign immunity under Missouri law. So you have to make the case, I think, that the statute unambiguously supports only your reading. If it supports another reading, then we have an ambiguity and we strictly construe it in favor of sovereign immunity. So let me ask you this. The statute is written in the active voice. It says the political subdivision of the state may purchase liability, then goes on to. But it's not written. It doesn't say obtains in the passive voice that the political subdivision obtains insurance or has obtained insurance. And I'm not doing that very well. But think of the passive voice equivalent. Isn't there two reasonable interpretations here? Isn't there an interpretation that says the political subdivision has to hand over the money, has to contract with the insurance agency or the insurance company? And then there's your interpretation, which may very well be reasonable, that it's enough to ask a third party to put them on the insurance policy. Aren't there two reasonable interpretations? I disagree, Your Honor. And the reason being that they don't define the term purchase. And if they had intended that to be the effect, they would have limited it. And what you see in the case law is Fugate versus Jackson Hewitt. It's 347 Southwest 381. It's a different context, but it talks about that issue. And it stated that the legislature's silence on direct payment to providers of services doesn't indicate a legislative intent to limit the term to direct or indirect payment by the third party. Well, let me give you an example. Suppose that the statute was written a little differently. Now I'm actually going to give it to you in passive voice. A political subdivision is covered by liability insurance for tort claims. There it doesn't matter who bought it, when they bought it, as long as there's coverage, and it goes to your existence point. That would be a clearer statute that this particular situation falls within it. But it seems to me when you have the political subdivision having to do something, it doesn't – I mean, it's a different way of asking the same question. It just doesn't seem like it clearly supports your position. It may – there may be an interpretation that supports your position, but it's not the only one. What I can do is go by the case law that we have in Missouri, which is Hull's Apple, and also the Gregg case. Gregg in particular is what I cited, but in both cases you have a contractual responsibility for the contractor to purchase insurance. And the cases weren't decided specifically on that question, but the courts made no – had no commentary whatsoever about whether it would be available if a third party made the purchase under 537.610. Covered is used in the next sentence, though, right? It says sovereign immunity is waived only to the extent purposes covered by a policy of insurance. So they do drip passive around here, and purposes provided in self-insurance plans. And they do give that discretion to the governing body. So you think Gregg's your closest case? I do think Gregg is. It's dicta in Gregg, though, right? Court appeals dicta. The best black letter law. It's one the district court relies on, but it's dicta, right? It is. It is, and that's why I think it's appropriate to look at how it's been addressed in other situations. It's because it's an undefined term. And I want to go back, Your Honors, to the agency question, because I really think that answers the did the entity make the purchase, because it did direct the purchase in its contract. There's also cross-indemnification provisions by each of them in their contract, which is an interesting fact to add. But here's the more important point, and that is Mr. Behr said that there is no input or control over the terms or conditions in the contract in the insurance agreement. By the contract itself, the county required ACH to provide it with the terms and conditions of the policy. And if it received that policy, and as admitted, it knows full well how to preserve sovereign immunity with the exculpatory language, which it does, then it had a responsibility to take action to carry out its intent with its agent. Instead, it's ratified because they see it and they leave it as it is. At the end of his argument, Mr. Behr pointed out that the policy only covers the county for negligence of ACH. Is that right? And if so, does that affect the analysis here? I don't think that that interpretation of the policy is correct. I believe the policy covers strong and hovey for the acts and omissions of whoever's in charge of the medical care provision. And so if they have supervisory liability, as the court ruled, or if they have. You do have direct claims against some of the county employees, right? I do. Absolutely. Yeah, that are independent of any negligence of ACH, right? Not as to strong and hovey. Not or yes. We don't have a common law claim against, I don't believe, against strong and hovey. It's a supervisory claim. Related to actions of ACH. Yes. Okay. All right. And by implication, the county has sued in their official and individual capacities. So I believe the coverage exists based on those claims. Whoops. I think we just lost Mr. Bird. Ms. Rudolph, can you reach out to Mr. Bird and see if we can get him back? Absolutely. Thank you. Thank you. Thank you. I'm so sorry, Your Honors. The battery died on my end. I'm glad there wasn't a hot question pending. All right. You may proceed if you have anything else. You know, I believe that that covers the extent of our position on it. Very well. Thank you, Mr. Bird. Mr. Barrett, I think you might have a little rebuttal time. Very brief. There was one thing that Mr. Bird said at the beginning of his argument that I want to impress upon you. He says, there is insurance to cover the claim, so why is anybody hurt? Here's the reason that Buchanan County is harmed or hurt or damaged. They have to share the coverage amount, in this case, let's say it's a million dollars, with ACH. It's not Buchanan County's coverage. It's the ACH coverage. If I could very briefly direct your attention to the joint appendix, page 560, that says this. If coverage provided to the additional insurer is required by a written contract or written agreement, the most we will pay on behalf of the additional insurer is the amount of insurance required by the contract. So ACH goes out and gets a contract of insurance. And ACH, in this case, let's say there's a million dollars worth of coverage. And that coverage inures to the benefit of ACH. Now they name Buchanan County and Sheriff Strong as co-insurance. Guess what? That's not our coverage. We have to share it with ACH. But, counsel, there's a limit to the statute. There's a limit to the statute, too, about how much you're liable for. Correct? I would agree with you, Judge. That's the legislative judgment here about how much you can be liable for, period. Right? True. And I'm not arguing about that. But the point that I'm making is it's ACH's coverage. It's not Buchanan County's coverage. The second thing I would point out, and Mr. Byrd made an issue of Section 105.1070, I would agree that that statute authorizes a governmental entity to go out and buy insurance for other governmental entities. The problem is it's a governmental entity buying insurance for a governmental entity. And that, I believe, would bring it within the parameters of 537.610. Finally, the last thing I would note is what Judge Strauss was saying. And I hope I'm not mischaracterizing his comment. And if I do, Judge, please feel free to question me or give me the old Professor Evil Odd. The problem with this case is Buchanan County, the only thing they asked for was to be made a co-insurer under the ACH policy. ACH didn't go out and buy a new policy. ACH didn't go out and add an endorsement or a rider or an addendum to the policy providing for additional insurance coverage to Buchanan County and Sheriff Strong. They just added them as an additional insurer to a, let's say, $1 million policy that applied to ACH and not Buchanan County and Sheriff Strong. Thank you, Mr. Barrett. Thank you, Your Honors. Thank you to both counsel. We appreciate your appearance and argument today. Case is submitted and we'll decide it in due course.